HOUSTON, Justice.
This is an appeal from a summary judgment granted in favor of the Alabama Farm Bureau Federation and Affiliated Companies Retirement Plan and Trust Agreement and Alabama Farm Bureau Mutual Casualty Insurance Co., Inc., and against Jasper Estes and other plaintiffs similarly situated. We affirm.
This dispute centers around the plaintiffs’ allegation that a qualified employee defined benefit retirement plan established for their benefit was overfunded by the contributions of their former employer. They further allege that when their former employer, Associated Milk Producers, Inc. (AMP), went out of business in 1981, it assigned to its employees its right to receive reimbursements as a result of any overpayments. Plaintiffs argue that, as a result of that assignment, they are entitled to receive immediate disbursement of those funds contributed by AMP which were in excess of those needed to maintain the plan. The defendants argue, on the other hand, that there were no overpayments. Additionally, they contend that the plaintiffs should have filed their complaint in federal court, and that the courts of the State of Alabama lack jurisdiction to resolve the dispute.
Thus, there are two issues presented for our review:
(1) Whether Alabama’s state courts have jurisdiction to decide the case; and, if so,
(2) Whether the retirement plan was overfunded, and, if so, whether the plaintiffs are entitled to receive the excess funds.
With regard to the first issue above, we cannot agree that the courts of Alabama lack jurisdiction over this matter. The retirement plan in question is governed by *555 the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. (1984). Without question, one of the main objectives Congress had in enacting ERISA was to afford comprehensive federal protection of the interest of participants in employee pension benefit plans. Hoffman v. Chandler, 431 So.2d 499 (Ala.1983). To that end, ERISA provides that the federal courts shall have exclusive jurisdiction over certain civil actions brought under the Act. 29 U.S.C. § 1132(e)(1) (1984). But ERISA also provides that the state courts and the federal courts shall have concurrent jurisdiction of actions delineated in subsection (a)(1)(B) of § 1132. Subsection (a)(1)(B) provides that “a civil action may be brought by a beneficiary to recover benefits under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.”
The plaintiffs state in their complaint that they “have requested of the defendants the refund of that excess above and beyond the amount necessary to fund the retirement benefits of the AMP employees and their beneficiaries, but defendants have refused said request [and] [t]his refusal is contrary to [the] terms of the plan....” This complaint clearly indicates that the plaintiffs seek “to enforce their rights under the terms of the plan.” Since ERISA provides that state courts have concurrent jurisdiction with the federal courts over such cases, there can be no merit to defendants’ contention that this state’s courts lack jurisdiction over the case before us. Although defendants could have sought removal of the case to federal court, their failure to seek such a removal does not change the fact that this state has jurisdiction over the case.
Having disposed of the issue of jurisdiction, we now turn to the merits of this dispute. In his order granting summary judgment in favor of the defendants, Judge Joseph D. Phelps presented, in complete and masterful fashion, the reasons for his decision. We adopt that order, in its entirety, as the opinion of this Court. It is as follows:
“ORDER AND OPINION
“This matter came before the Court on cross motions for summary judgment. Based on the evidence before the Court and the briefs and oral arguments of counsel, the Court, for reasons discussed below, has determined there is no genuine issue of material fact and it is, therefore, ORDERED, ADJUDGED and DECREED that defendants’ Motion for summary Judgment is hereby GRANTED and that plaintiffs’ Motion for Summary Judgment is hereby DENIED.
“Plaintiffs are former employees of Associated Milk Producers, Inc. (“AMP”). AMP was a contributing employer to a retirement plan known as the Alabama Farm Bureau Federation and Affiliated Companies Retirement Plan and Trust Agreement (the “Plan”). The Plan is administered by a committee (“Committee”). The defendants are the Plan and Alabama Farm Bureau Mutual Casualty Insurance Company, Inc.
“FACTUAL BACKGROUND
“On April 1, 1950 Alabama Farm Bureau Mutual Casualty Insurance Company (“Farm Bureau”) and Alabama Farm Bureau Federation adopted a retirement plan known as American Farm Bureau Employees’ Retirement Plan. Effective July 1, 1973, Alabama Farm Bureau Federation, Alabama Farm Bureau Mutual Casualty Insurance Company, Inc., Alabama Farm Bureau Service Company, Inc., Farm Bureau Grain Company, Inc., Rural Health of Alabama, Inc., restated their retirement plan by adopting and establishing the Plan. The Plan was and is a multiple-employer single-fund retirement plan for the benefit of the employees of the participating employers thereunder.
“The Plan is a qualified employee retirement plan governed by the Employee Retirement Income Security Act of 1984 (“ERISA”). More specifically, the Plan is a defined benefit plan. In a defined benefit *556 plan, the employers obligate themselves to pay through the Plan a specified monthly pension to their employees at retirement for the duration of their lives.
“ERISA rules require methodical funding of all liabilities for benefits of a defined pension plan through contributions by the employers during the years prior to an employee’s retirement. Contributions are actuarially calculated to produce the promised pension.
“The actuary for the Plan for the time period relevant to this suit has been Tillin-ghast, Nelson & Warren, Inc. (“Actuary”). The acceptable contribution range for each employer contributing to the Plan (“Employer”) was calculated by the Actuary as prescribed by ERISA.
“All the Employers contributed the allowable maximum each year to ensure that adequate monies would be available to fund the prescribed benefits. All of the contributions to the Plan are administered in a single fund and not separately by employer.
“In 1981, AMP sold its assets to Dairymen, Inc. and terminated its participation in the Plan effective June 30, 1981. Certain of the employees of AMP petitioned the Committee to pay them their vested benefits in a lump sum payment rather than waiting until normal or early retirement age. The Committee, as it is empowered [to do] pursuant to the terms of the Plan, denied their requests. That decision was affirmed on appeal to the Committee. The propriety of this decision is not disputed. The AMP employees have vested benefits and will receive all benefits to which they are entitled as participating employees in accordance with and pursuant to the terms of the Plan.
“In 1981, AMP allegedly assigned to its employees AMP’s rights to receive monies, if any, due it from the Plan as a result of AMP’s terminating its participation in the Plan. As assignees of AMP, certain former employees of AMP asked the Committee to pay them the difference between funds contributed by AMP to the Plan and the total of the employees' lump sum settlement requests referred to by their attorney as ‘excess funds.’ The Committee declined to do so and rendered its decision on December 3, 1981. Section 7.03B(3) of the Plan provides that the Committee’s decisions on matters submitted to it are final.
“Nothing further occurred in this matter until certain of the former AMP employees brought the instant suit, contending: (1) that the defendants breached their contractual duties under the Plan by requiring AMP to make contributions in excess of the amount necessary to fund the benefits of AMP employees under the Plan; (2) that defendants also breached the contract by their refusal to pay to plaintiffs, as AMP assignees, the ‘excess’ of the amount contributed by AMP above the amount necessary to fund the benefits of the AMP employees and their beneficiaries; and (3) that they were owed monies had and received by defendants. These allegations will now be discussed.

“No Breach of Contract

“A review of the unambiguous provisions of the Plan reveals that defendants did not breach the terms of the Plan by refusing to pay to plaintiffs, as assignees of AMP, monies contributed by AMP to fund Plan benefits. Section 6.01 of the Plan clearly states that “all contributions by the Employer (AMP) shall be irrevocable, and shall be used only for the benefits of the Participants and Beneficiaries [employees and dependents] under the Plan” (emphasis added).
“Moreover, ERISA provides [that] employer contributions are irrevocable once made, that they are to be held and used ‘for the exclusive purposes of providing benefits to participants in the Plan and their Beneficiaries and to defray reasonable expenses of administering the Plan,’ and that they ‘shall never inure to the benefit of any employer.' Pension Reform Act § 403.
“On July 1, 1976, the Plan was amended to permit refunds to employers under the following limited circumstances.
*557 “ ‘10.12 Return of Plan Assets to the Employer.
“ ‘The assets of the Plan shall be held for the exclusive purpose of providing benefits to Participants and their Payees, and shall never inure to the benefit of the Employer, except:
“ ‘(1) Where Employer Contributions were made by mistake of fact, such contributions shall be returned to the Employer within one (1) year after the payment of the contribution.
“ ‘(2) Where Employer Contributions were conditioned on the qualification of the Plan by the Internal Revenue Service, such Contributions may be returned to the employer within one (1) year after the date of the denial of qualification of the Plan.
“ ‘(3) Where Employer Contributions were conditioned upon deductibility of the Contributions under the Internal Revenue Code, such Contributions, to the extent disallowed, may be returned to the Employer at its request within one (1) year of the disallowance of the deduction.
“ ‘(4) In accordance with Section 8.03.

“Contribution Not made by Mistake

“Plaintiffs contend that any funds contributed in excess of that needed to fund the Plan were made by mistake and that refunds of these amounts should be made to them. Section 6 of the Plan governs contributions to the Plan and provides how the amount and the manner of contribution is determined. Under Section 6.02, no contributions are required of Participants (the participating employees). All funds are provided by the Employers. Section 6.01 of the Plan provides that contributions by an employer ‘shall be paid to the Trastee at such times and in such amounts as determined by the employer, based upon the recommendations of the Actuary for the Plan, as may be required to maintain the Plan in accordance with the funding provisions of the Act [ERISA].’ ”
“Sections 7.03(a) of the Plan provides that each Employer has the duty to make contributions in accordance with Section 6.01. According to the terms of the Plan, each year the Actuary has the duty to prepare materials comprising the actuarial statements required by ERISA which includes determining the permissible contribution range.
“Because AMP, pursuant to § 6.01, had the absolute duty to determine the amount of its contribution under the Plan, and as those contributions were within the limits referred to in the Plan, plaintiffs, as the assignees of AMP, have no right to complain about the amounts contributed by AMP. Moreover, as discussed further.below, there is no way to presently determine the amount which will be needed for the Plan to meet its obligations under the funding method utilized. Thus, the Court specifically finds that no contributions made by AMP were made by it under a mistake of fact and that defendants breached no duty under the Plan regarding contributions from AMP. Furthermore, there is no evidence that the contributions were conditioned on the qualification of the Plan by the IRS, or were conditioned upon the de-ductibility of the contributions under the Internal Revenue Code.

“No ‘Excess’ to Refund

“Section 8.03 provides that an employer may terminate participation in the Plan and that upon termination the benefits of each affected participant shall be nonforfeitable. In such a case the Trustee is required by the Plan to administer the fund until directed by the Committee to distribute the fund. Furthermore, ‘No part of the Fund shall at any time revert to the Employer unless all benefits for participants and their Payees have been provided’ (§ 8.03 of the Plan). Additionally, § 9.03B(3)(d), which also deals with the situation of an employer terminating its participation in the Plan, provides in pertinent part: ‘Any residual assets of the Plan attributable to a Participating employer may be distributed to that employer after all liabilities have been satisfied’ (page 9-5 of Plan) (emphasis added).
“Hence, pursuant to the terms of the Plan, (as well as ERISA regulations, and *558 the regulations of the Internal Revenue Service), AMP’s contributions to the Plan were irrevocable and neither the contributions [nor] earnings on those contributions may be returned to AMP until all liabilities of the Plan, both fixed and contingent, have been satisfied in full.
“In this case, Plan benefits are funded by a trust fund. Under the terms of the Plan such a funding procedure is permissible and within the discretion of the Plan. § 6.01, et seq. As such, all liabilities will not be satisfied until the last Payee dies and the final payment [is] made. Furthermore, until such liabilities have been satisfied in full, it is impossible to determine whether there will be any ‘excess’ funds in the trust resulting from AMP contributions.
“Plaintiffs contend that the Committee should fund the benefits of AMP employees with an amount deemed actuarially ‘reasonable’ to satisfy future benefits and pay the difference between that amount and the amount contributed by AMP to them as AMP assignees. In fact, the Actuary made such calculations. However, Duke Miles, the Actuary, noted that if the difference sought by plaintiffs was paid out and there was any ‘adverse experience at all, then there would not be sufficient funds to pay the benefits from the funds contributed by AMP’ (Miles dep. at 20). He further noted that although he thought his estimate of potential liability for AMP employee benefits was a reasonable one: “I would certainly not expect it to be a guarantee that the ultimate liability would not be higher or lower.” Id. at 26-27.
“One reason for this inability to be sure that the estimate is accurate is that it is based on mortality tables which set forth averages for the nation as a whole. Mr. Miles noted that in a small group such as the former AMP employees, wide variations from the average can be expected. Indeed, ‘The smaller the group gets, the wider the variation’ (Miles dep. at 27).
“It is significant to note that not all employees of AMP entitled to pension benefits under the Plan are seeking refunds as assignees of AMP in this action. Thus, distributing Plan resources to plaintiffs would undercut the security of the pension benefits of the non-plaintiff AMP employees. One may also conclude from a reading of the Plan that contributions made by Employers under the Plan fund the benefits of all participating employees regardless of by whom they are employed. In such a situation any distribution to plaintiffs undermines the security of the retirement benefits of all participating employees. It is not necessary, however, for the Court to reach this issue [because] whether monies contributed by AMP fund the benefits of all participating employees in the Plan or merely fund the benefits of AMP employees, the decision of the Court remains the same.
“Hence, as the liabilities of the Plan will not be satisfied nor will all benefits be provided at least until such time as the last Payee of AMP employees has received the last payment due under the Plan, as all benefits have not been so paid, and as there can be no determination of whether there is an ‘excess’ of funds until the last such payment, the Court concludes that the Committee was correct in determining that no funds are due AMP or its assignees at this time under the terms of the Plan.
“Moreover, the actions of the Committee regarding plaintiff’s demands were entirely consistent with the findings and decision of this court and the provisions of the Plan and therefore are due to be sustained.
“Moreover, the actions of the Committee regarding plaintiff’s demands were entirely consistent with the findings and decision of this Court and the provisions of the Plan and therefore are due to be sustained.

“Monies Had and Received

“As it has been determined by this Court that no monies are due to AMP from the Plan, judgment is also due to be entered in favor of defendants on plaintiffs’ cause of action for monies had and received.”
*559 The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED
TORBERT, C.J., and JONES, ALMON and BEATTY, JJ., concur.