Plaintiff/Appellee Doris Chandler initiated this cause on February 6, 1979, seeking compensatory and punitive damages from Defendants/Appellants Russell E. Hoffman, F. Leland Jones, and American Employees Benefit Trust (AEBT).[1] The crux of Plaintiff's claim was premised upon allegations of breach of fiduciary duty and willful misconduct (i.e., fraud) by Defendants in their nonpayment to Plaintiff of insurance benefits allegedly due under an employee's retirement and benefit plan with her employer, Watson Glass Company of Enterprise, Alabama.
On October 21, 1981, a jury returned a verdict for Plaintiff in the amount of $100,000 against AEBT, and Jones and Hoffman in their individual capacities. We reverse and remand for a new trial.
 FACTS
In January of 1977, Leland Jones, Russell Hoffman, and James Hinton, under the auspices of the Employee Retirement Income Security Act (ERISA) of 1974 (29 U.S.C. § 1001-1381 (1976)), established American Employees Benefit Trust (AEBT).[2] The initial organizational meeting was held in *Page 501 
Montgomery, Alabama. One of the primary purposes for the creation of AEBT was to assume business from an Alabama insurance company of which Jones was an officer, and which was then in receivership.
Doris Chandler applied for hospital and medical insurance in May of 1977, through her employer, Watson Glass Company. At the time, these benefits were offered by Mr. Byron Bruce, an independent agent for American Associates Underwriters (AAU) of Alabama. American Associates Underwriters was owned by Mr. Jimmy Powell of Montgomery, Alabama, an insurance broker.[3]
In May 1977, Powell met with Leland Jones in Atlanta to discuss the assumption by AEBT of Powell's insurance business in Alabama. According to Powell, he informed Jones at this meeting that part of the business to be assumed was that of Watson Glass Company. Documents submitted by Powell to AEBT, and introduced by Plaintiff at trial, show that Watson Glass Company was "signed up" on May 24, 1977, with coverage to become effective June 1, 1977. Premiums from those groups covered by Powell's Alabama agency, including Watson Glass, were forwarded by Powell to AEBT in June, 1977. Premiums for the months of August and September were paid directly to AEBT by Watson Glass.[4]
Doris Chandler was treated for cystitis, a lower urinary bladder infection, in January 1977 by her personal physician, Dr. Jim Paulk. Ms. Chandler returned to Dr. Paulk in August of 1977, complaining of pelvic pain. Diagnosis and evaluation revealed the need for a hysterectomy. This operation was performed in September 1977 by Dr. O'Neal, a partner of Dr. Paulk.
Subsequent to her operation, Ms. Chandler submitted a claim for medical and hospital costs directly to AEBT. By letter dated November 9, 1977, and signed by Roz Hoffman (Defendant Hoffman's wife), Ms. Chandler was informed for the first time that her claim was being denied due to a "pre-existing" condition allegedly associated with her illness. A second denial followed in December, 1977.
Dr. Paulk testified that the original claim, submitted by his office to AEBT on behalf of Ms. Chandler, contained an error regarding the nature of her illness. Thereafter, he spoke with Jones, who informed him that a subsequent letter of explanation concerning the mistake should be forwarded to AEBT, and that the claim would then be paid. In January, 1978, Dr. Paulk received correspondence from AEBT and Jones to the effect that the claim was being processed and would be paid. Dr. Paulk next attempted to contact Jones in Atlanta, but discovered his telephone had been disconnected.
 ISSUES ADDRESSED
Because our reversal is based upon the "forms of verdict" issue, we deem it prudent to otherwise limit our review to the propriety of Appellants' jurisdictional challenge.
 IN PERSONAM JURISDICTION
The Defendants were originally served pursuant to the "long arm" jurisdiction of this State. ARCP 4.2(a)(2)(I). The propriety of such jurisdiction is premised upon the mandate that Defendants have sufficient "minimum contacts" within this State, so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."Williams v. Barrington Ford, Inc., 402 So.2d 903 (Ala. 1981);International Shoe Co. v. Washington, 326 U.S. 310,66 S.Ct. 154, 90 L.Ed. 95 (1945). For a summary of the constitutional requirements in this area, see 2 J. Moore, Federal Practice, para. 4.25 at 1171-73 (2d ed. 1953). *Page 502 
Defendants, while grudgingly conceding the "probability" of Alabama's jurisdiction over AEBT, argue that it does not necessarily follow that defendants Hoffman and Jones, in their individual capacities, should likewise be encompassed by the inpersonam "umbrella." Jones and Hoffman were trustees of AEBT, an Alabama trust. The trust was consummated in Montgomery, Alabama, by Jones and Hoffman personally. AEBT, along with Jones and Hoffman, assumed the business of an Alabama insurance trust. Jones and Hoffman received premiums from an Alabama resident. They each engaged in a course of conduct aimed at deriving revenue from residents of Alabama. Their suggestion that, because of their "trustee" status, any "minimum contacts" with this State were those of AEBT only is unacceptable.
We hold, under the rationale of International Shoe Co. v.Washington, supra, that the evidence is more than sufficient to meet the "minimum contacts" test; and the trial court did not err in requiring AEBT, Hoffman, and Jones to defend their course of action, made the basis of the instant claims, before Alabama tribunals. See, also, McGee v. International LifeInsurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223
(1957).
SUBJECT MATTER JURISDICTION
Plaintiff's original six-count complaint sought, inter alia, "recovery of benefits" under the terms of Defendants' plan. She next amended her complaint, alleging, inter alia, that individual Defendants were fiduciaries-trustees of AEBT and that they owed certain "fiduciary duties," as provided by law, by the trust agreement, and by ERISA. Plaintiff further alleged that the trustees failed to use the care, skill, prudence, and diligence of reasonable men and/or were grossly negligent and/or were guilty of willful misconduct in paying, administering or negotiating plaintiff's claim.
The trial court interpreted Plaintiff's complaint to contain two (2) theories: 1) that the trustees did not exercise good faith in processing Ms. Chandler's claim pursuant to ERISA guidelines; and 2) that the trustees exercised bad faith under the laws of the State of Alabama. Accordingly, the court charged the jury: 1) as to the duties of the trustees under the trust document and ERISA; and 2) as to the fiduciary relationship and responsibility of the trustees under ERISA and the trust document; and 3) as to the question of bad faith under the laws of this State.
29 U.S.C. § 1132 (e)(1) (1976), provides:
 "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."
Subsection (a)(1)(B) provides that a civil action may be brought by a participant or beneficiary:
 "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;"
Congress enacted ERISA to afford comprehensive federal protection of the interests of participants in employee benefit plans. There is no dispute that the pension plans involved here are "employee pension benefit plans" within 29 U.S.C. § 1144
(1976), which provides:
"(a) Supersedure; effective date
 "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . .
". . . .
"(c) Definitions
"For purposes of this section:
 "(1) The term `State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. . .. *Page 503 
 "(2) The term `State' includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter."
The scope of ERISA's pre-emption of state law is delineated in these four subsections of § 1144.
Defendants contend that the state court lacked subject matter jurisdiction over the issue of their fiduciary relationship or duties as trustees of an ERISA trust. Accordingly, under Defendants' analysis, when Plaintiff amended her complaint to bring in the Defendants/trustees and questioned their fiduciary responsibilities, her claims were beyond the subject matter jurisdiction of the state court. Thus, say Defendants, all actions taken by the trial court from the date of the amendment were null and void. We disagree.
In Goldberg v. Caplan, 277 Pa. Super. 47, 419 A.2d 653 (Pa. Super. 1980), cited by Defendants, a former officer of a corporation petitioned for "removal of trustees" of employee pension plans. The trial court ordered that the petition for "removal" be consolidated with the officer's original equity action seeking "recovery of benefits" under the plan. On appeal, the appellate court held that ERISA's provision, stating in effect that state courts and federal courts had concurrent jurisdiction over acts to recover benefits due under employee benefit plans, did not confer subject matter jurisdiction on the trial court to determine the officer's petition for "removal." Defendants reason that the facts ofGoldberg, supra, are symmetrical with those now before us; and that, as a consequence, any jurisdiction that may have reposed in the courts of this State under Plaintiff's original complaint was displaced by the advent of Plaintiff's amendment alleging "fiduciary impropriety." Cursory perusal of Goldberg
lends credence to this assertion. A more careful and detailed inquiry, however, exposes its lack of merit.
In Goldberg, the fatal flaw in the lower court's order requiring reversal was the petition for removal of the trustees, not the requested equitable relief to direct the trustees to pay claimant his vested interests in the trust plan. A petition for removal of the trustees in no way relates to the recovery of benefits; therefore, the plain language of29 U.S.C. § 1132(a)(1)(B), does not encompass bringing suchremoval action in a state court.[5]
Admittedly, certain general language in Goldberg favors Defendants' position; but it must be read in light of the precise issue presented and in the context of the court's holding. When so read, Goldberg is not inconsistent with our holding here of subject matter jurisdiction in the state court. Here, all of plaintiff's claims seek to "recover benefits due [her] under the terms of the plan." The gravamen of the complaint remained the same, even after the amendment adding the individuals as parties Defendant. *Page 504 
Decided in the same year as Goldberg is the case of Eversolev. Metropolitan Life Insurance Co., Inc., 500 F. Supp. 1162
(C.D.Cal. 1980), involving facts and claims closely analogous to those in the instant case. In Eversole, supra, plaintiff's complaint sought compensatory and punitive damages on four (4) causes of action: 1) breach of the duty of good faith and fair dealing; 2) common law fraud; 3) breach of fiduciary duties; and 4) breach of statutory duties under state statute. Holding that the state law claims were not pre-empted by ERISA, the court stated:
 "The gravaman of the complaint is defendants' alleged bad faith denial of plaintiff's claim for medical benefits due under the insurance policy."
In both Eversole and the instant case, the claims were directed toward recovery of benefits due claimant under the terms of the plan, and not toward the regulation or removal of trustees. The danger envisioned by Congress, and recognized inGoldberg — that of subjecting trustees to the threat of conflicting and inconsistent regulation — is simply not present in the case at bar.
 THE TRIAL COURT'S FAILURE TO DELINEATE BETWEEN THE INDIVIDUAL DEFENDANTS Subsequent to completion of the substantive portion of the trial court's charge to the jury, the trial judge submitted to the panel three possible alternatives upon which the case might be decided. The first was as follows: "We, the jury, find for the plaintiff against the defendant American Employees Benefit Trust in fixed damages at $ ____. We further find in favor of the defendants Russell E. Hoffman and Leland Jones."
The second verdict form given the jury read:
 "We, the jury, find for the plaintiff against the defendant American Employees Benefit Trust, Russell E. Hoffman and F. Leland Jones in fixed damages at $ _____."
Additionally, the trial court, in its explanation to the jury of the concept of punitive damages, stated:
 "Ladies and gentlemen of the jury, there is a possibility that you could find since there is a default against American Employees Benefit Trust a verdict against the trust and yet you not be able to have a unanimous decision, if that even be a result, you could not all agree to a verdict against the defendants personally. You would be unanimously agreeing that there should be a verdict against the trust but there could be in the jury's deliberation process a situation arise where you could not have a decision for or against the defendants personally and you would have a hung jury and mistrial on the issue of personal liability, but a judgment unanimously determined against the trust. I have not written a verdict out in that respect, but if that be your decision you report that and one will be directed and entered by the court itself along that issue. That just came to me at this particular time and I don't already have one written out, but conceivably it would be read, We the jury find for the plaintiff against the defendant American Employees Benefit Trust and fix damages at $ ____ and mistry the case as to defendants Hoffman and Leland Jones, resolving the issue between the trust and the plaintiff and the matter would stay as entered the courtroom Monday against the other defendants."
We note with particular emphasis that, despite submission to the jury of the three proposed methods of disposition heretofore expressed, there remained still another viable alternative, to-wit: a finding by the jury favorable to one individual defendant and unfavorable to the other.[6] As properly noted by Defendants at the time, the trial court's proposed verdict forms failed to afford the jury any opportunity to delineate between the relative guilt, if any, of Defendants Hoffman and Jones, individually. *Page 505 
This was improper. Although joint liability was authorized, it was not mandated under the pleadings and proof of this case. See Southern Hardware Supply Co. v. Block Brothers Co.,163 Ala. 81, 50 So. 1036 (1909). Each Defendant was sued in his individual capacity, based upon his particular role in Plaintiff's alleged factual scenario. While we express no opinion as to what result should obtain from the record before us, we are clear to the conclusion that one of the viable options available to the jury was foreclosed by the verdict forms and the trial court's oral instruction relative thereto. By this procedure, the trial court erred to reversal.
Although our reversal is based upon an issue raised only by the individual Defendants, because of the relationship of the corporate and individual Defendants, we believe justice requires that this cause be remanded for a new trial as to all parties defendant.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX and SHORES, JJ., concur.
BEATTY, J., concurs in the result.
[1] Plaintiff's original complaint was against AEBT, as an entity, and the "Powell Trust," an employee benefit and trust plan established and operated by Mr. James Powell of Montgomery, Alabama. Plaintiff later amended her complaint, adding, as individual Defendants, Russell E. Hoffman and F. Leland Jones. Subsequently, the "Powell Trust" was dropped as a party Defendant. Prior to trial on the merits against Jones and Hoffman, a default judgment was entered against AEBT by the trial court.
[2] In 1974, Congress passed the Employee Retirement Income Security Act, commonly referred to as ERISA. Under the provisions of the Act, Congress established federal control over certain fields of the insurance industry, particularly in relation to employer-employee retirement, and self-funded health programs.
ERISA, in effect, allowed federally chartered, small, self-funded insurance companies to operate under the regulation of the United States Secretary of Labor. Such companies were called "trusts," and established as entities in and of themselves, with the right to sue and be sued. Pursuant to express provisions of the Act, jurisdiction of claims against such trusts remained, generally, with the Federal District Courts, with state courts having concurrent jurisdiction in causes involving: (1) Recovery of benefits due a beneficiary under the terms of his or her plan; (2) Enforcement of rights under the terms of the plan; and (3) Clarification of rights to future benefits under the terms of the plan.
[3] American Associates Underwriters (AAU) is the "Powell Trust," originally a defendant, but later dropped as a party to these proceedings.
[4] In December of 1977, AEBT attempted to return to Powell the premiums paid by Watson Glass Company. This money was thereafter returned to AEBT by Powell.
[5] Likewise, Central States, Etc. v. Old Security Life InsuranceCompany, 600 F.2d 671 (7th Cir. 1979), cited by Defendants, is inapposite. Although the Plaintiff ostensibly charged Defendants with "breach of contract, fraud, conspiracy, and breach of fiduciary duty under state law," the gravamen of the action was the alleged waste of assets and mismanagement of the fund and not a claim for benefits under the terms of the plan. The following excerpt from Central States, supra, summarizing the basis for the relief sought against Defendants, suffices to demonstrate the invocation of the pre-emption clause of29 U.S.C. § 1132(e)(1):
 "It is alleged that the Fund contracted with Old Security for insurance benefits to Fund members; that at that time Old Security failed to inform the Fund of Old Security's feeble financial condition; that the Fund transferred $7 million in premiums to Old Security; that Old Security defaulted on the contract because of its financial condition; that the failure to inform and default were part of a complex scheme in which defendants conspired to defraud the Fund of $7 million, all of which was misappropriated, diverted, and wasted by defendants. . . . Old Security and various other defendants filed counterclaims and third-party claims charging trustees, officers, and agents of the Fund with complicity or actual participation in the scheme to defraud." 600 F.2d at 673.
[6] This philosophy is adopted by A.P.J.I.Civ. 37.05.