# Virginia Duffy v. Richard D. Brannen, Dr. Richard D. Brannen Keogh Plan; First Vermont Bank & Trust Company

[529 A.2d 643]

No. 85-212

Present: Allen, C.J., Hill, Peck and Gibson, JJ., and
Barney, C.J. (Ret.), Specially Assigned

Opinion Filed April 17, 1987

*Therese M. Corsones* of *Corsones & Hansen,* Rutland, for Plaintiff-Appellee.

*Paul S. Kulig* of *Keyser, Crowley, Banse & Facey,* Rutland, for Defendants-Appellants.

**Hill, J.** This is an appeal from a judgment entered, after trial to the court, in favor of plaintiff in an action in which plaintiff alleged wrongful deprivation by defendants of benefits due her under the terms of her employer-defendant's pension plan. In this appeal, defendants challenge the subject-matter jurisdiction of the trial court, as well as numerous specific aspects of the court's judgment. We affirm in part, reverse in part, and remand for further hearing on the issue of attorney's fees.

Plaintiff-appellee is a former employee of defendant-appellant Dr. Richard D. Brannen, an optometrist who has practiced his profession in Vermont since 1967. Plaintiff began working full-time as an optometric assistant in defendant's Rutland office in June of 1977. Beginning in April, 1968, and continuing throughout the relevant period, Dr. Brannen also operated a second office in Hanover, New Hampshire. During the fall of 1978, Dr. Brannen decided to adopt a Self-Employed Individual's Retirement Plan (hereinafter Keogh Plan) for himself and employees of his sole proprietorship in Rutland. The defendant First Vermont Bank & Trust Company (Bank) was the trustee of the Keogh Plan, and the Plan was a qualified employee benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461.

The Keogh Plan Adoption Agreement specified that an employee would become eligible to participate after three years of service with the employer. Thus, at the time the Keogh Plan was established, plaintiff was not an eligible participant, but did become one on June 1, 1980. For the 1978 and 1979 tax years, Dr. Brannen made contributions to the Keogh Plan on behalf of himself and two other employees who had become eligible participants.

In October of 1979, Dr. Brannen decided to incorporate his New Hampshire practice. After forming the corporation, for

which he was the sole shareholder and director, as well as president and treasurer, Dr. Brannen decided to set up two corporate employee benefit plans—one profit-sharing plan and one pension plan—since the corporation could not establish a Keogh Plan. These two corporate plans, like the Keogh Plan, were prototypes marketed by the Bank, so that the Bank would in normal course act as trustee for the plans.

Unlike the case with the Keogh Plan, however, the circumstances surrounding the creation of the corporate plans were characterized by incomplete documentation, seeming indifference by Dr. Brannen to the legal requirements for establishment of such plans, as well as questionable performance by the Bank in its role as trustee for the plans. It was this allegedly questionable conduct of Dr. Brannen, his accountant, and the trustee Bank (discussed more specifically below) in setting up these corporate plans, and consummating certain transactions between these plans and the Keogh Plan, that formed the factual basis for part of plaintiff's claim that she had been wrongfully deprived of benefits due her under the Keogh Plan. The Plan Adoption Agreements for the corporate pension plan and profit-sharing plan were executed by Dr. Brannen in October of 1979, but neither document contained the required signature of the Bank as trustee. In fact, the Bank did not even receive copies of these documents until February, 1982. Moreover, Bank officers testified that they did not consider the Bank to be trustee of the two corporate plans until sometime in 1983 when the corporation finally furnished a corporate resolution for the execution of the plans.

Dr. Brannen made no contributions directly to the Keogh Plan for the period of time during which plaintiff was an eligible participant in that plan.[1] On March 1, 1981, however, defendant sent to the trustee Bank a check for $8,000, which he indicated was his corporate pension plan contribution for the tax year 1980. Since the Bank at that time had no documentation on the corporate plans, it deposited this money in the Keogh Plan account. After receiving the instruments of adoption for the two corporate plans from Dr. Brannen in February, 1982, the Bank in June, 1982,

---

[1] Because of the three year employment requirement of the Keogh Plan, plaintiff was only eligible to participate from June 1, 1980 until December 31, 1981, when she terminated her employment with Dr. Brannen.

withdrew the $8,000 from the Keogh Plan account and deposited it in the corporate pension plan account.

Without any knowledge of her employer's recent activity with respect to the various benefit plans, plaintiff terminated her employment with Dr. Brannen by mutual agreement on December 31, 1981. When she did so, she inquired from Dr. Brannen about which benefits she would be entitled to under the Keogh Plan. Although defendant Brannen had never provided her with any statement or disclosure setting forth the terms of the Keogh Plan, or any annual reports or summaries pertaining to her interest in the plan assets, she expected to receive some benefits on termination of her employment for two reasons. First, she had been told by Dr. Brannen of her accruing benefits in the Plan in response to her earlier inquiries about pay increases, and second, she was aware that a fellow employee in the Rutland office had received benefits upon termination of her employment in March of 1981. Nevertheless, in response to her inquiries, she was told by Dr. Brannen that no funds had been contributed by him to the plan during the period of her employment in which she was a qualified participant, meaning she was not entitled to any benefits.

Plaintiff then contacted the Bank, and was told that Dr. Brannen had never informed the Bank of her eligibility to participate in the Keogh Plan. She also learned from the Bank that no contributions had been made by Dr. Brannen to the Keogh Plan since the time she had become eligible. The Bank explained that no contributions had been made for her because 1980 and 1981 were nonprofit years for defendant's Rutland office. The Bank made these statements because it felt that, despite its deposit of the $8,000 into the Keogh account in March of 1981, plaintiff had no right to any portion of this contribution because it had been designated by Dr. Brannen as his 1980 contribution to the corporate pension plan.

Plaintiff then filed an action against Dr. Brannen, the Bank, the two corporate plans, and the Keogh Plan to recover benefits due her under the Keogh Plan. She also sought compensatory and punitive damages against Dr. Brannen and the Bank for breach of their fiduciary duties under the Plan, as well as attorney's fees. The trial court ruled in favor of plaintiff, and ordered that she be awarded the benefits due her under the Keogh Plan for the period of time in which she was eligible to participate in the Plan. This part of the award was based on the terms of the Keogh Plan,

which the court interpreted to require mandatory contributions by the employer on behalf of eligible employees, so that such an employee would be entitled to benefits whether contributions were actually made or not.

In addition, the court ordered that all payments made to the Bank by Dr. Brannen or his New Hampshire corporation during the period of plaintiff's eligible employment, regardless of their designation, were funds to which she was entitled an allocation. This part of the order was based on the court's conclusion that the corporate plans were "shams," which were created for the purpose of defrauding plaintiff of benefits due her under the Keogh Plan. In support of this conclusion, the court found that Dr. Brannen, in conjunction with his accountant, had used the New Hampshire corporation and the two corporate plans, through manipulation of income and expense documentation, to siphon income out of the Rutland proprietorship, into the New Hampshire corporation, and finally into the corporate plans rather than the Keogh Plan.

On the basis of these findings, the court ordered the Bank to provide it with an "accounting of all sums received from Dr. Brannen or from Dr. Brannen's New Hampshire corporation during the time of Mrs. Duffy's employment and all sums due and owing Mrs. Duffy under the subject Keogh plan . . . ." The court's subsequent compensatory damage award, entered on a joint and severable basis against all defendants, was based on this accounting. Additionally, the court concluded that the Bank had breached its fiduciary duties as trustee under the Keogh Plan, and awarded $2,000 punitive damages against the Bank. The court also ordered Dr. Brannen to pay plaintiff's attorney's fees in the amount of $4,380.

Only defendant Brannen and the three Plans have appealed. The Bank has paid the punitive damage award, as well as the compensatory damage award. Only the attorney's fee portion of the trial court judgment remains unpaid.

The appealing defendants raise several issues on appeal. First, they argue that the trial court lacked subject-matter jurisdiction over the entire action because plaintiff's claims all arise under ERISA, which according to them gives federal courts exclusive jurisdiction over such actions. Second, they argue that the trial court's interpretation of the terms of the Keogh Plan to require mandatory contributions on behalf of plaintiff was erroneous.

Third, they argue that the trial court's findings that the corporate plans were "shams" used to intentionally defraud plaintiff of pension benefits were clearly erroneous. Fourth, they attack the court's damage award on several grounds. Lastly, they challenge the award of attorney's fees.

## I.

Before addressing the merits of these arguments, we must first determine which are proper for resolution by this Court. As noted above, the compensatory damage award has been paid in full by the Bank, which has not appealed. Plaintiff-appellee argues that in this posture, all aspects of defendants' appeal that relate to the compensatory damage award are moot.

It is axiomatic that this Court will not adjudicate any part of an appeal that is not based on a live controversy. *Town of Cavendish* v. *Vermont Public Power Supply Authority*, 141 Vt. 144, 147, 446 A.2d 792, 793 (1982); Vt. Const. ch. II, § 30. Since defendants raise a number of different issues, we will discuss each in turn.

The issue of the trial court's subject-matter jurisdiction, when challenged by a party, like Dr. Brannen, who is appealing an unsatisfied attorney's fees award, is always justiciable because the presence of such jurisdiction is a necessary predicate for any of the court's actions. *Fisher* v. *Town of Marlboro*, 132 Vt. 533, 534, 323 A.2d 577, 578 (1974). Furthermore, there is no doubt as to the justiciable nature of defendant Brannen's direct challenge to the court's attorney's fees award since it remains unpaid. With regard to defendants' second, third, and fourth arguments, however, the presence of a justiciable controversy is much less clear. All of these arguments relate to the validity of the court's compensatory damage award.

The only argument made by defendants as to why this Court should adjudicate this part of the appeal is that there may be collateral legal consequences from our failure to adjudicate these issues. Specifically, defendants argue that because in making its compensatory damage award the court declared the two corporate plans shams, the court's judgment leaves unclear the continued legal status of these plans and the status of the interests of other employee-beneficiaries in the assets of these plans. According to

defendants, the compensatory damage award must be reviewed in order to settle these questions.

Those questions need not be addressed, however, because of our holding below that the trial court lacked jurisdiction to declare the plans shams, requiring reversal of that part of the court's judgment. See Part IIC, *infra*. Accordingly, because the compensatory damage award has been paid in full by a nonappealing defendant, the portions of the other defendants' appeal relating to the compensatory damage award are moot. *Employees Finance Co.* v. *Lathram*, 369 S.W.2d 927, 929-30 (Tex. 1963).

We now turn to the remaining issues of subject-matter jurisdiction and attorney's fees.

## II.

Although this action was originally commenced as one for an accounting under 12 V.S.A. § 4251, the parties do not now dispute that the three pension and profit-sharing plans involved in this case are qualified employee benefit plans governed by ERISA, 29 U.S.C. §§ 1001-1461. Furthermore, although plaintiff carefully avoids any reference to ERISA in her complaint, she expressly alleges violations of various provisions of ERISA in her trial brief, thus conceding the applicability of ERISA to her case. Defendants' argument that ERISA provides for exclusive federal jurisdiction over the claims asserted by plaintiff requires us to first examine the text of and the policies underlying the complex enforcement provisions of ERISA.

■ Jurisdiction over matters involving pension and profit-sharing plans under ERISA is provided in 29 U.S.C. § 1132(e)(1), which states:

> Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

Subsection (a)(1)(B) provides:

> (a) A civil action may be brought . . .
> (1) by a participant or beneficiary . . .

. . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

Furthermore, as a means of providing comprehensive federal protection of the interests of participants in employee benefit plans, Congress enacted an express preemption provision found in 29 U.S.C. § 1144, which provides:

(a) Supersedure; effective date

Except as provided in subsection (b) of this section,[2] the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . .

. . . .

(c) Definitions

For purposes of this section:

(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. . . .

(2) The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

Section 1144 has been interpreted to evince Congress' intent "to establish pension plan regulation as exclusively a federal concern." See *Alessi* v. *Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). The almost total federal preemption created by ERISA reflects two important policies. First, the comprehensive and exclusive federal regulation of this area promotes a superior federal interest "in the regulation of covered plans which are recognized as having a nationwide impact . . . ." *Young* v. *Sheet Metal Workers' International*, 112 Misc. 2d 692, 698-99, 447 N.Y.S.2d 798, 802 (Sup. Ct. 1981). Second, broad federal preemption protects employers and fiduciaries from the threat of conflicting and

---

[2] Subsection (b) of § 1144 relates exclusively to causes of action accruing before the effective date of ERISA.

inconsistent state and local regulation of employee benefit plans. *Hewlett-Packard Co.* v. *Barnes*, 425 F. Supp. 1294, 1299 (N.D. Cal. 1977) (citing legislative history).

In line with this policy of broad federal preemption, Congress by express statutory directive markedly restricted access to state court by the participants in a covered plan. Concurrent jurisdiction is vested in the state courts *only* with respect to a civil action commenced by a participant or beneficiary seeking to recover or clarify rights to benefits "under the terms of the plan," or to enforce rights "under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As one court has stated:

> "Congress's choice to grant the state courts concurrent jurisdiction over . . . cases [brought under § 1132(a)(1)(B)] squares with its overall legislative goals. Actions to recover benefits or enforce rights under the terms of a plan will typically involve the application of those general principles of contract law with which the state courts have had substantial experience before ERISA; their expertise qualifies them to evaluate these rules in light of ERISA's policies . . . ."

*Lembo* v. *Texaco, Inc.*, 182 Cal. App. 3d 299, 306, 227 Cal. Rptr. 289, 293 (1986) (quoting *Menhorn* v. *Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1500 n.2 (9th Cir. 1984)).

Plaintiff's argument is that even though she specifically alleged breaches of statutory fiduciary duties on the part of defendant Brannen and the Bank, as well as specific violations of various other ERISA provisions, the gravamen of her complaint is for the recovery of benefits due her under the terms of the Keogh Plan, bringing her action within the concurrent jurisdiction of state and federal courts under 29 U.S.C. § 1132(a)(1)(B). Defendants argue that plaintiff's allegations of breach of fiduciary obligations brings plaintiff's action outside the scope of § 1132(a)(1)(B), and within the exclusive jurisdiction of the federal courts.

The unstated premise of both of these arguments is that state court jurisdiction over an action such as the one brought by plaintiff is an all or nothing proposition: a state court has jurisdiction over all related claims or none of them. Section 1132(a)(1)(B), however, sets forth the criteria for concurrent jurisdiction in state courts in terms of the nature of the claim made by an aggrieved participant. Therefore, we think it appropriate to analyze the issue of jurisdiction by focusing separately on each of plaintiff's va-

rious claims, as set forth in her trial brief, and relied upon by the trial court as the basis for its judgment. With this understanding of the policies underlying the preemption and jurisdictional provisions of ERISA, we now turn to each of plaintiff's claims.

### A. Violation of ERISA Disclosure Requirements

Plaintiff alleged, and the trial court concluded that, by failing to provide plaintiff with summaries of the Keogh Plan, and with copies of the statements and schedules for each fiscal year of the Plan, defendant Brannen violated the provisions of 29 U.S.C. § 1024(b).[3] The trial court clearly lacked jurisdiction to decide this question, as it is precisely the type of claim relegated to the exclusive jurisdiction of the federal courts under 29 U.S.C. § 1132(e).

29 U.S.C. § 1132(c) sets for the the extent to which a plan administrator[4] may be liable for failure to furnish information to a participant or beneficiary as required by § 1024(b). 29 U.S.C. § 1132(a)(1)(A) is the provision which grants a participant the right to bring an action for relief provided in § 1132(c). As noted above, however, § 1132(e) grants *exclusive jurisdiction* to federal courts of *all* "civil actions under this title brought by . . . a participant," *with the exception* of actions brought under § 1132(a)(1)(B). Accordingly, that part of the court's judgment relating to violations of § 1024(b), because it is based on the jurisdictional foundation of 29 U.S.C. § 1132(a)(1)(A), is void for lack of subject-matter jurisdiction.

### B. Recovery of Benefits Due Under the Terms of the Keogh Plan

Plaintiff alleged that she was entitled to benefits under the terms of the Keogh Plan based on her interpretation of the Plan terms as requiring mandatory contributions on behalf of participating employees, regardless of whether any actual contributions

---

[3] 29 U.S.C. § 1024(b) imposes an obligation on a plan administrator to furnish summary plan descriptions and annual reports to participants and beneficiaries in accordance with the time schedules and other substantive requirements of that section. The reporting and disclosure requirements imposed by ERISA are an integral aspect of the statute's scheme of protection for the participants and beneficiaries of employee benefit plans.

[4] Defendant Brannen was the plan administrator for all the plans in question within the meaning of 29 U.S.C. § 1002(16)(A).

were made by the employer. Defendant Brannen disputed plaintiff's interpretation of the Plan terms, and argued that since no contributions were made by him to the Keogh Plan during the period of plaintiff's eligible employment, and because contributions on behalf of employees were optional when no contributions are made for the benefit of an owner-employee, plaintiff was not entitled to any benefits on termination of her employment. The trial court agreed with plaintiff's interpretation of the Plan terms, and awarded plaintiff benefits due her under the Keogh Plan for the period of her eligible employment under that Plan.

■ This claim clearly falls within the scope of state court jurisdiction under § 1132(a)(1)(B), as it is an action "wherein the participant or beneficiary asks the Court, as in a typical contract action, to construe or apply the terms of the plan to the facts of his/her particular issue." *Young* v. *Sheet Metal Workers*, 112 Misc. 2d at 701, 447 N.Y.S.2d at 803. In order to find that a participant is entitled to benefits under the Keogh Plan, all the court is required to do is interpret the terms of the Plan; it need go no further. Such a claim clearly arises "under the terms of the plan," and is therefore within the concurrent jurisdiction of state courts under 29 U.S.C. § 1132(a)(1)(B). See, e.g., *Farrow* v. *Montgomery Ward Long Term Disability Plan*, 176 Cal. App. 3d 648, 657, 222 Cal. Rptr. 325, 330 (1986); *Lavergne* v. *New England Teamsters & Trucking Industry Pension Fund*, 494 A.2d 1185, 1186 n.1 (R.I. 1985); *Evans* v. *W. E. A. Insurance Trust*, 122 Wis. 2d 1, 4-5, 361 N.W.2d 630, 631 (1985).

## C. Recovery of Amounts Deposited in Corporate Pension Plan Account

Plaintiff alleged in her trial brief that, on June 9, 1982, the Bank improperly transferred from the Keogh Plan account to the corporate pension plan account funds in the amount of $8,000, which had originally been deposited by the Bank, acting as trustee, into the Keogh Plan account in March of 1981. Plaintiff alleged that this transfer of funds violated the specific prohibition against such transfers contained in 29 U.S.C. § 1106(a)(1)(D),[5]

---

[5] Section 1106(a)(1)(D) provides:
    (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . .

and constituted a breach of the Bank's fiduciary obligations imposed by 29 U.S.C. § 1104. The trial court agreed with plaintiff, concluded that § 1104 had been violated, and ordered that plaintiff was entitled to an "appropriate allocation" of all payments made by Dr. Brannen or his corporation to any of the three Plans, regardless of their designation, during the period of plaintiff's eligible employment. Since the $8,000 payment was the only one made during this period of time, it is the only one at issue.

We agree with defendants that the trial court lacked the jurisdiction to make this part of its order. Plaintiff's claim relating to the improper transfer of $8,000 between Plans places directly into question the propriety of certain conduct by the trustee and calls for a construction and implementation of standards of conduct established by ERISA.[6] As such, it is clearly the type of claim Congress intended to come within the exclusive jurisdiction of the federal courts. See *Young*, 112 Misc. 2d at 701, 447 N.Y.S.2d at 803.

The same conclusion applies to plaintiff's allegation of violations of 29 U.S.C. § 1104. This claim essentially raises the question of the propriety of certain conduct which ERISA directly regulates. ERISA provides specific penalties for violations of the duties imposed by § 1104. See 29 U.S.C. § 1109. Since a claim alleging breach of fiduciary obligations is not within the exception to exclusive federal jurisdiction contained in 29 U.S.C. § 1132(a)(1)(B), it follows that only federal courts have jurisdiction to adjudicate such claims under § 1132(e).

The express language of ERISA thus contradicts plaintiff's argument in support of state court jurisdiction over these claims, which is derived from the holding in *Hoffman* v. *Chandler*, 431 So. 2d 499, 503-04 (Ala. 1983). In *Hoffman*, the plaintiff brought

. . . .

(D) transfer to, or use by or for the benefit of, a party in interest, of the assets of the plan . . . .

[6] Although the trial court nowhere in its decision refers specifically to 29 U.S.C. § 1106(a)(1)(D), it did conclude in an express finding that the June 9, 1982, transfer of $8,000 from the Keogh Plan account to the corporate pension account was an improper transfer out of trust corpus into a false corporate trust. Therefore, notwithstanding the absence of any express finding of a violation of 29 U.S.C. § 1106(a)(1)(D), the court clearly based its decision in part on its conclusion that the $8,000 transfer was in derogation of plaintiff's rights as a participant in the Keogh Plan and in violation of the Bank's fiduciary obligation as trustee of the plans.

an action to recover benefits allegedly due her under the terms of an employee benefit welfare plan governed by ERISA. The plaintiff subsequently amended her complaint alleging that the individual defendants had breached certain fiduciary duties under ERISA. On appeal, the Alabama Supreme Court held that the trial court had jurisdiction over all claims because the gravamen of plaintiff's complaint was for "recovery of benefits due [her]." *Id.* at 504.

■ We decline to follow *Hoffman* because it gives insufficient weight to the express language of ERISA jurisdictional provisions, as well as the policies underlying these provisions. We think that the language of and policy underlying ERISA's jurisdictional provisions mandates a restrictive interpretation of the words "under the terms of the plan" contained in 29 U.S.C. § 1132(a)(1)(B). We hold, therefore, that a state court's jurisdiction under this provision is limited to claims like those discussed in Part IIB of this opinion, where the sole issue is whether, as a matter of contract law, a plaintiff is entitled to benefits under the terms of the plan. Any pendent claim, related or unrelated to the main contract claim, and challenging the propriety of conduct otherwise regulated by ERISA, is beyond the jurisdiction of state courts. Our restrictive interpretation of the words "under the terms of the plan" is supported by the holdings of the majority of courts that have addressed the question. See *Lembo* v. *Texaco, Inc.*, 182 Cal. App. 3d at 306, 227 Cal. Rptr. at 293 ("actions involving breaches of fiduciary duties . . . are within the exclusive jurisdiction of the federal courts."); *Young*, 112 Misc. 2d at 700, 447 N.Y.S.2d at 803 (actions alleging breach of fiduciary duty are within the exclusive jurisdiction of federal courts); *Smith* v. *Crowder Jr. Co.*, 280 Pa. Super. 626, 636, 421 A.2d 1107, 1112 (1980) ("exclusive jurisdiction of an action against the fiduciaries of an employee benefit plan for breach of their duties under ERISA lies in 'the district court of the United States.'"); *Goldberg* v. *Caplan*, 227 Pa. Super. 47, 54, 419 A.2d 653, 657 (1980) (ERISA "does not confer jurisdiction upon state courts to determine actions . . . against fiduciaries for the breach of their duties under ERISA."); see also H. R. Conf. Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 5038, 5107 ("The U.S. district courts are to have exclusive jurisdiction with respect to actions involving breach of fiduciary responsibility . . . .").

Lastly, the trial court also found that the two corporate plans were "shams" created for the purposes of defrauding plaintiff of benefits due her. Based on our holding above, it follows that the court lacked the jurisdiction to make this part of its order as well.

Absent jurisdiction to make the orders discussed in this part of the opinion, the orders are void. *Fisher* v. *Town of Marlboro*, 132 Vt. at 534, 323 A.2d at 578.

## III.

■ The remaining issue is the propriety of the trial court's attorney's fees award against defendant Brannen. 29 U.S.C. § 1132(g) allows the court in its discretion to award costs and a reasonable attorney's fee to any party. The factors to be considered in determining the appropriateness of attorney's fees are the degree of an offending party's culpability or bad faith, the ability of such a party to satisfy the award of fees, whether an award of fees would deter others from acting similarly in like situations, the relative merits of the parties, and whether the action is sought to confer a common benefit on a group of plan participants. *Miles* v. *New York State Teamsters Conference*, 698 F.2d 593, 602 & n.9 (2d Cir. 1983). The trial court, concluding that all factors but the last weighed heavily in favor of a fees award against defendant Brannen, awarded fees to plaintiff in the amount of $4,380.

In light of our holding today regarding the jurisdictional limitations on the issues the court could address, reconsideration of the court's fee award is mandated. The court's view of the first and fourth factors: the degree of the offending party's bad faith, and the relative merits of the parties' positions, may be influenced by our holding today relating to those issues which were beyond its jurisdiction. Accordingly, we remand for a new hearing on attorney's fees.

*Affirmed in part, reversed in part, remanded for further proceedings consistent with the views expressed in this opinion.*