**In the Matter of the ESTATE OF Edith DAMON, Protected Person.**

**James R. DAMON, Conservator of the Estate of Edith Damon, Third–Party Plaintiff–Appellee and Cross–Appellant,**

v.

**UNISYS CORPORATION, Third–Party Defendant–Appellant and Cross–Appellee,**

**and Concerning Colorado State Hospital, Claimant–Appellee.**

No. 93CA0233.

Colorado Court of Appeals, Div. III.

June 16, 1994.

As Modified on Denial of Petition for Rehearing of Third–Party Plaintiff–Appellee and Cross–Appellant Aug. 11, 1994.

Petition for Rehearing of Third–Party Defendant–Appellant and Cross–Appellee Denied Aug. 11, 1994.

Certiorari Granted April 17, 1995.

Smith & Young Law Offices, P.C., Peter M. Smith, Englewood, for third-party plaintiff-appellee and cross-appellant.

Rothgerber, Appel, Powers & Johnson, Michael D. Nosler, Brian J. Spano, Denver, for third-party defendant-appellant and cross-appellee.

Machol, Davis & Michael, P.C., James A. Kaplan, Denver, for claimant-appellee.

Opinion by Judge JONES.

This action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (1988) (ERISA), was commenced in response to a claim asserted against the Estate of Edith Lorraine Damon (Estate) by the Colorado State Hospital (Hospital) for the cost of the care and treatment provided to Ms. Damon following the termination of post-retirement medical benefits by Unisys Corporation, her insurer. The Conservator of the Estate filed a third-party complaint against third-party defendant, Unisys, asserting, under state law, claims such as breach of contract and bad faith breach of insurance contract, and under ERISA, to compel it to pay for Ms. Damon's care and treatment at the Hospital. The Estate also sought punitive damages under state law.

The trial court granted Unisys' motion for partial summary judgment and dismissed the state law claims on the grounds that they were preempted by the ERISA claims. Following a bench trial, the trial court entered judgment in favor of the Hospital and against the Estate in the amount of $302,348.34 plus interest, and in favor of the Estate and against Unisys on its ERISA claim.

Unisys now appeals the judgment entered against it, and the Estate cross-appeals the dismissal of its state law claims. This court has authorized the Hospital to enter this action as an appellee. With respect to the judgment against Unisys, we affirm in part and vacate in part. We affirm the trial court's dismissal of the Estate's state law claims.

The trial court found that in July 1986, Edith Damon shot her husband, Robert Damon, causing his death. At the time of his death, Mr. Damon was a participant in a post-retirement medical plan, later administered by Unisys, and Edith Damon was a beneficiary under the plan. Edith Damon was found not guilty by reason of insanity of the murder of her husband and was committed to the Colorado State Hospital in October 1987. Unisys paid for the care and treatment of Edith Damon at the Hospital under the terms of its plan until June 1, 1989, when the payment of benefits was terminated.

Under the terms of the "highlights" of the plan, the only plan documents in existence according to the record, the Unisys Benefits Payment Office (UBPO) is granted the "exclusive right and responsibility to interpret the provisions of the Plan," and is listed as

the "party for appeals." The UBPO is operated and staffed entirely by Aetna Life and Casualty Company. A Unisys employee in another location, Unisys' Director of Welfare Plans and Financial Administration, is designated to act as the administrator of the plan. This administrator is empowered to implement the distribution or denial of benefits based upon the UBPO's recommendations.

In March 1989, the UBPO initiated a review of the care and treatment being provided to Edith Damon at the Hospital to determine whether it was medically necessary or if it was excluded under the terms of the plan as simply custodial or maintenance care. Ms. Damon's medical records were provided to Lynn Zimmerman, a nurse at the UBPO, who then forwarded the records for review to Philippa Coughlan, Ph.D., a psychologist who was a consultant for Aetna.

In April 1989, Dr. Coughlan drafted a memorandum to Ms. Zimmerman stating that Ms. Damon should be able to live in a less restricted setting than the Colorado State Hospital and that she did not need an acute level of treatment. Before Ms. Zimmerman had received the April memorandum, she received a telephone call from Dr. Coughlan, who stated that Ms. Damon's treatment at the Hospital "did not appear to be medically necessary."

Based on her conversation with Dr. Coughlan, Ms. Zimmerman advised the plan administrator, in a telephone conversation, that review of the medical records indicated that the services being rendered to Edith Damon were maintenance or custodial in nature and were not covered by the Unisys Plan. Ms. Zimmerman therefore concluded that benefits should be denied and terminated, and the administrator concurred.

Shortly thereafter, Ms. Zimmerman sent a letter to Ms. Damon advising her that, effective June 1, 1989, she would no longer be eligible for benefits under the Unisys employee benefits plan. Review and reconsideration of the termination of benefits was then requested by the conservator for the Estate. Following that request, Ms. Zimmerman resubmitted Edith Damon's medical records to Dr. Coughlan for additional review. The doctor, while acknowledging that Edith Damon was emotionally disturbed, confirmed her initial opinion that Ms. Damon's treatment at the Hospital was not medically necessary. Ms. Zimmerman then advised the Estate that Unisys was maintaining its denial of benefits.

In May 1990, the Hospital informed Unisys that Edith Damon had been transferred from the Geriatrics Ward to the Female Forensic Unit in October 1989. The Hospital provided additional medical records, including a letter from Edith Damon's treating psychiatrist, and requested that Unisys review its denial of benefits. This new information was provided to Dr. Coughlan for further review. The doctor drafted a memorandum to Ms. Zimmerman in which she observed that "a conscientious effort was made to provide a more acute level of treatment for this patient." A series of telephone calls then ensued between Dr. Coughlan and Ms. Zimmerman culminating in instructions from the doctor that Ms. Zimmerman strike parts of her memorandum, insert some additional language, and confirm the denial of benefits. In July 1990, Ms. Zimmerman advised the Hospital that Unisys would maintain its denial of benefits.

In her deposition, Ms. Zimmerman testified that she did not review Ms. Damon's medical records, that she deferred to any recommendation by Dr. Coughlan, and that she had no part in determining benefits other than sending documents back and forth. According to Ms. Zimmerman, Dr. Coughlan decided whether Unisys could maintain the denial of benefits.

The trial court found that the plan administrator never reviewed any medical records, consultant's reports, or any written materials whatsoever. Instead, "his only participation in the decision to deny benefits to Edith Damon was a phone call from Ms. Zimmerman who passed on Dr. Coughlan's yet to be written findings."

Upon completion of the bench trial, the trial court concluded that the Estate was liable to the Hospital for the expenses incurred in the care and treatment of Edith Damon. The court also determined that the decision of the plan administrator to deny

benefits to Edith Damon was arbitrary and capricious. The court ordered that the denial of benefits be vacated.

Additionally, the trial court concluded that the Estate was denied a "full and fair review" of the denial of benefits by Unisys as required by the provisions of 29 U.S.C. § 1133 (1988), and directed that Unisys pay attorney fees pursuant to 29 U.S.C. § 1132(g)(1) (1988).

Unisys now appeals the trial court's order setting aside and vacating the denial of benefits under its employee health plan as well as the award of attorney fees. The Estate cross-appeals the trial court's entry of partial summary judgment dismissing its state law claims.

## I.

■ On cross-appeal, the Estate contends that the trial court erred in granting partial summary judgment in favor of Unisys resulting in the dismissal of its state law claims. The Estate argues that the Unisys' employee health benefits plan was not a viable ERISA plan and that, therefore, the trial court erred in determining that its state law claims were preempted by ERISA. We disagree.

The Estate premises its contentions on the undisputed fact that the entire Unisys plan was set forth in an employee handbook which referred to the plan provisions therein as only the "highlights" of a more complete employee benefits plan. In fact, there was no separate written plan. The "highlights" may fail to conform to some of the procedural requirements for an employee benefits plan under the provisions of ERISA. *See* 29 U.S.C. § 1001 et seq. (1988). However, the benefit provisions set forth in the employee handbook contain sufficient detail to permit the employee to discern what benefits are available under the plan and additionally to allow the distribution of benefits under the plan's terms as set forth in the "highlights."

ERISA applies to any "employee benefit plan," 29 U.S.C. § 1003 (1988), which is defined to include an "employee welfare benefit plan." 29 U.S.C. § 1002(3) (1988). An "employee welfare benefit plan" is defined under ERISA as a plan established or maintained by an employer for the purpose of providing medical benefits for its participants or their beneficiaries. 29 U.S.C. § 1002(1) (1988).

■ The existence of a formal instrument or official plan document is not a prerequisite to ERISA coverage if, from the surrounding circumstances, a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. *Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236 (5th Cir.1990).

As the trial court found, these criteria are evident from the "highlights" of the plan here. *See Kanne v. Connecticut General Life Insurance Co.*, 867 F.2d 489 (9th Cir. 1988) (existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person). Furthermore, the plan conforms to the definition of an employee welfare benefit plan. Accordingly, we perceive no merit in the Estate's argument on cross-appeal that its state law claims are not preempted by ERISA because no viable ERISA plan exists here.

■ Finally, preemption under ERISA, as to common law or state statutory claims, occurs if a claim "relates to" an employee benefit plan unless that claim is based on a law that regulates insurance. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Kanne v. Connecticut General Life Insurance Co., supra*. The state claims here, such as breach of contract, plainly relate to the employee benefits plan but do not refer to insurance regulation laws. *See Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Memorial Hospital System v. Northbrook Life Insurance Co., supra*. Thus, the state claims are preempted, and the trial court did not err in granting partial summary judgment and dismissing the Estate's state law claims.

## II.

■ On appeal, Unisys first contends that the trial court erred in basing its award of benefits, under 29 U.S.C. § 1132(a)(1)(B)

(1988), on an incorrect standard of review. In the alternative, Unisys argues that the trial court erred in interpreting and applying the standard of review upon which the award of benefits was based and that, in so doing, the trial court exceeded its subject matter jurisdiction under ERISA. We disagree.

The ERISA statute provides that an ERISA plan participant or beneficiary may bring a civil action to recover benefits due under the terms of the plan to enforce his or her rights under the plan, or to clarify rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B) (1988). Under § 1132(a)(1)(B), the federal district courts and state courts have concurrent jurisdiction of such actions, but the federal district courts have exclusive jurisdiction over any other civil action brought under any other provision of ERISA. 29 U.S.C. § 1132(e)(1) (1988).

■ Here, the Estate's claim alleges that: "The actions of Unisys Corporation in terminating the payments and refusing to pay for the continued care to Edith L. Damon constitute violation of the plan under ERISA enforceable through 29 U.S.C. § 1132(a)(1)(B)." Actions concerned solely with obtaining benefits prescribed by an ERISA plan pursuant to § 1132(a)(1)(B) are within a state court's jurisdiction, *Hamilton, Johnston & Co. v. Johnston,* 256 N.J.Super. 657, 607 A.2d 1044 (1992); *Young v. Sheet Metal Workers' International Ass'n Production Workers Welfare Fund,* 112 Misc.2d 692, 447 N.Y.S.2d 798 (1981); *Duffy v. Brannen,* 148 Vt. 75, 529 A.2d 643 (1987), and therefore, this action was properly brought in the state court.

In an action brought under 29 U.S.C. § 1132(a)(1)(B), one of two standards of review may be applied.

## A.

### STANDARD OF REVIEW

■ The United States Supreme Court, in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80, 95 (1989), held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the

benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." In the latter instance, an arbitrary and capricious standard of review is to be applied. *See Hamilton, Johnston & Co. v. Johnston, supra.*

Under ERISA, a person is a fiduciary with respect to a plan to the extent that he or she "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i) (1988); *Firestone Tire & Rubber Co. v. Bruch, supra.* Based on this definition of "fiduciary," both the administrator and the UBPO employee, Ms. Zimmerman, qualify as fiduciaries under the ERISA plan here.

■ The administrator is a fiduciary under Unisys' ERISA plan because he was delegated the ultimate responsibility of distributing or denying benefits. Ms. Zimmerman is also a fiduciary because she is an employee of the UBPO, which was granted the exclusive right and responsibility to interpret the provisions of the plan, and she was instrumental in recommending to the administrator whether benefits were to be continued or terminated.

■ Contrary to the arguments of Unisys, neither the administrator nor Ms. Zimmerman abdicated this fiduciary authority to a non-fiduciary party, which would necessitate a *de novo* review. *Cf. Christie v. K–Mart Corporation Employees Retirement Pension Plan,* 784 F.Supp. 796 (D.Kan.1992); *Soule v. Retirement Income Plan for Salaried Employees of Rexham Corp.,* 723 F.Supp. 1138 (W.D.N.C.1989). Rather, both Ms. Zimmerman and the administrator exercised their fiduciary authority under the plan by respectively recommending and implementing the denial of benefits to Ms. Damon.

Here, the plan has conferred both authority and discretion upon the fiduciaries to decide questions of plan interpretation, and this discretion was exercised. *See Pratt v. Petroleum Production Management, Inc. Employee Savings Plan & Trust,* 920 F.2d 651 (10th Cir.1990). Consequently, in reviewing the

fiduciaries' denial of benefits under § 1132(a)(1)(B), an arbitrary and capricious standard of review, rather than *de novo* review, is warranted. *See Firestone Tire & Rubber Co. v. Bruch, supra.* Accordingly, the trial court did not err in applying an arbitrary and capricious standard of review in assessing the Estate's claims under § 1132(a)(1)(B).

## B.

### ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW

■ In determining whether the decision of a plan administrator or fiduciary regarding benefit distribution under § 1132(a)(1)(B) is arbitrary and capricious, a trial court generally may consider only the arguments and evidence before the administrator or fiduciary at the time it made that decision. A court then must consider this evidence to ascertain whether it substantially supports the administrator's or fiduciary's determination of benefit distribution or whether the determination was arbitrary and capricious because it was unsupportable by substantial evidence. *Sandoval v. Aetna Life & Casualty Insurance Co.,* 967 F.2d 377 (10th Cir.1992).

■ Here, the record reflects that the arguments and evidence before the fiduciaries, Ms. Zimmerman, and the administrator, when they made their decisions to recommend and terminate benefits to Ms. Damon, consisted almost entirely of the findings and opinion of an Aetna consultant, Dr. Coughlan. Her findings were relayed through Ms. Zimmerman to the administrator. Neither fiduciary reviewed any medical records.

Ms. Zimmerman testified that she deferred to any recommendation by Dr. Coughlan, while the administrator's only participation in the events culminating in his decision to terminate benefits was a phone call from Ms. Zimmerman who passed on Dr. Coughlan's unwritten findings.

In sum, there was virtually no evidence before the plan fiduciaries when the decision was made to terminate Ms. Damon's benefits. Because the evidence before the fiduciaries was far less than substantial when the decision to terminate benefits was reached, *see Sandoval v. Aetna Life and Casualty Insurance Co., supra,* we agree with the trial court that the decision to terminate benefits was arbitrary and capricious.

■ Unisys argues that, in rendering its conclusion that the denial of benefits here was arbitrary and capricious, the trial court focused on several procedural improprieties pursuant to ERISA. It further argues that the trial court's findings with regard to those procedural failings exceeds the state court's jurisdiction under § 1132(a)(1)(B) of ERISA because procedural improprieties are addressed by other sections of ERISA, under which the federal courts have exclusive jurisdiction. *See* 29 U.S.C. § 1132(e)(1).

While we agree that federal courts have exclusive jurisdiction over sections of ERISA other than § 1132(a)(1)(B), the trial court's analysis with respect to procedural improprieties here serves to reveal the lack of substantial evidence supporting the decision to deny benefits. Hence, the Estate's claim for plan benefits pursuant to § 1132(a)(1)(B) could properly be resolved upon an analysis of whether the evidence before the plan fiduciaries substantially supported the decision to terminate benefits, rather than upon procedural grounds. *See Hamilton, Johnston & Co. v. Johnston, supra* (pursuant to § 1132(a)(1)(B), action properly in state court when it is concerned solely with obtaining benefits prescribed by the plan and there is no question of propriety of fiduciary conduct); *cf. Young v. Sheet Metal Workers' International Ass'n, supra; Duffy v. Brannen, supra.* Consequently, we perceive no jurisdictional impropriety with regard to the resolution of the Estate's claim under § 1132(a)(1)(B).

## III.

■ Unisys also contends that the trial court lacked jurisdiction to address alleged violations of 29 U.S.C. § 1133 (1988). It argues that the federal courts have exclusive jurisdiction to address violations of this ERISA provision. We agree.

As we have previously observed, federal courts have exclusive preemptive jurisdiction

over all ERISA claims except those brought under § 1132(a)(1)(B), pursuant to which state and federal jurisdiction is concurrent. 29 U.S.C. § 1132(e)(1) (1988).

Hence, the trial court exceeded its jurisdiction in addressing whether the Estate was afforded a full and fair review of the denial of continued benefits pursuant to the procedural provisions of 29 U.S.C. § 1133. 29 U.S.C. § 1132(e)(1) (1988). Consequently, that part of the trial court's judgment and order addressing alleged violations of 29 U.S.C. § 1133 is vacated.

## IV.

Finally, Unisys contends that the trial court erred in awarding attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(1) (1988). It argues that the trial court awarded the fees without proper subject matter jurisdiction and without considering the appropriate discretionary factors. We disagree.

When an action pursuant to the ERISA statute is appropriately brought in state court, this court has previously held, in *Baker v. Sheet Metal Workers Local Union No. 9 Pension Trust Fund,* 669 P.2d 138 (Colo. App.1983), that the trial court has jurisdiction to award attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(1). *See Gorman v. Life Insurance Co.,* 811 S.W.2d 542 (Tex. 1991), *cert. denied,* 502 U.S. 824, 112 S.Ct. 88, 116 L.Ed.2d 60 (1991). Thus, here, the trial court had jurisdiction to consider an award of attorney fees and costs.

It is within the trial court's discretion to determine whether a party is entitled to attorney fees and costs as the result of an action brought under ERISA. Thus, the standard of review is whether the trial court abused its discretion in ruling on the motions for attorney fees and costs. *Gordon v. United States Steel Corp.,* 724 F.2d 106 (10th Cir.1983).

In exercising its discretion to determine whether to award attorney fees and costs under § 1132(g)(1), the trial court should consider these factors, among others: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties personally to satisfy an award of attorney fees; (3) whether an award of attorney fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Gordon v. United States Steel Corp., supra; Eaves v. Penn,* 587 F.2d 453 (10th Cir.1978); *see Rademacher v. Colorado Ass'n of Soil Conservation Districts Medical Benefit Plan,* 11 F.3d 1567 (10th Cir.1993); *Downie v. Independent Drivers Ass'n Pension Plan,* 945 F.2d 1171 (10th Cir.1991).

In order effectively to review the trial court's decision under the *Eaves* standard set forth above, we must be aware of the reasons the trial court decided as it did. However, here, the trial court dispensed with a hearing on the motion for attorney fees and costs and did not indicate those parts of the record it was relying upon in determining that an award of fees and costs is appropriate. Accordingly, remand is necessary in order for the trial court to state its reasons for awarding attorney fees and costs under the criteria set out above. *See Gordon v. United States Steel Corp., supra.* In addition, on remand, the trial court is directed to determine the amount of costs that may be awarded to appellants under C.A.R. 39(a).

The judgment of the trial court with respect to the Estate's claims under 29 U.S.C. §§ 1133 and 1132(g)(1) (1988) is vacated. The judgment of the trial court with respect to the Estate's claims under 29 U.S.C. § 1132(a)(1)(B) (1988) is affirmed, as is the trial court's dismissal of the Estate's state law claims. With respect to the trial court's award of attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(1) (1988) and C.A.R. 39(a), the cause is remanded for further findings consistent with this opinion.

PLANK and KAPELKE, JJ., concur.