OPINION OF THE COURT
Richard Rivera, J.
NATURE OF THE CASE
Defendants have moved to dismiss this breach of contract action in which plaintiff seeks to recover certain salary deductions that defendant Interfaith Medical Center (hereafter Interfaith) admittedly failed to deposit into a tax deferred annuity account (TDA) it maintained in plaintiff’s name under the terms of his employment contract. Defendants contend that the Employee Retirement Income Security Act of 1974 (ERISA) (29 USC § 1001 et seq.) both preempts State common law and confers exclusive jurisdiction over plaintiff’s claims in the Federal courts. Plaintiff has cross-moved for partial sum *585 mary judgment on his claims for recovery of his salary deductions and the related tax liability he estimates he will incur as a result of Interfaith’s breach of contract.
The questions presented are whether ERISA bars this action, and, if not, whether plaintiff is entitled to partial summary judgment.
Based on the parties’ written submissions, the relevant undisputed facts are as follows.
RELEVANT FACTS
Plaintiff is a physician who worked at Interfaith between January 1983 and December 1988. His last position was chief of the critical care division. Defendant Corbett Price is the hospital’s president and chief operating officer, and defendant Rev. G. Sherril is its board chairperson.
Pursuant to plaintiff’s employment contract, Interfaith established a TDA in his name which was funded through deductions from plaintiff’s salary. The parties agree that the TDA is subject to ERISA regulation (29 USC § 1002 [2] [A] [ii]). According to the terms of his TDA, plaintiff could withdraw the funds either when he retired or left his job with Interfaith. Through January 1988, Interfaith deposited plaintiff’s TDA salary deductions into the appropriate account.
Shortly after leaving his job with Interfaith, plaintiff withdrew the funds in his TDA and deposited them in another tax deferred account with a different bank. In the process, he discovered that Interfaith had failed to deposit all of his salary deductions into the TDA it maintained for him. As confirmed in letters written to the plaintiff by Interfaith’s benefits manager, Interfaith failed to deposit $14,039.72 it deducted from plaintiff’s salary between February and December 1988. In a letter dated April 3, 1990, for example, the benefits manager acknowledged:
"that our records indicate that Interfaith owes you $14,039.72 for failure to make contributions to your Tax Deferred Annuity for the period February to December, 1988.
"It is the hospital’s plan to deposit this amount to your account as soon as it is able to do so but no later than at the time that the bonds are sold.”
Defendants have not explained what happened to these funds.
Plaintiff’s complaint alleges two causes of action. The first raises a State common-law breach of contract claim based *586 upon Interfaith’s failure to make the required deposits and seeks recovery of $14,039.72. The second seeks compensatory damages of $7,039 which represents the taxes plaintiff estimates he will have to pay on the $14,039.72 judgment together with accumulated interest.
Defendants have raised three jurisdictional arguments in support of their motion to dismiss. First, they contend that ERISA’s preemption clause displaces all State laws (including common-law claims) that "relate to” ERISA pension plans and renders them unenforceable. Defendants thus urge that ER-ISA bars plaintiffs State breach of contract claim. Second, defendants also contend that ERISA’s civil enforcement provision has conferred exclusive jurisdiction over ERISA claims like plaintiffs upon the Federal courts (29 USC § 1132 [e] [1]), and that plaintiffs action does not come within the narrow category of cases over which State courts have concurrent jurisdiction (29 USC § 1132 [a] [1] [B]). Third, defendants maintain that plaintiffs undisputed failure to serve the United States Secretary of Labor with a copy of the complaint before commencing this litigation as required by 29 USC § 1132 (h) also deprives this court of jurisdiction. Lastly, defendants request that the court in its discretion stay this action until the United States Department of Labor (DOL) completes a pending investigation into Interfaith’s retirement, annuity, and pension plans. They maintain that such a stay will not prejudice the plaintiff, and that the stay would avoid the possibility of conflicting State and Federal determinations concerning employee pension benefit plan rights and obligations which was one of Congress’ central policy goals in enacting ERISA.
DISCUSSION

A. ERISA’s Statutory Scheme

Congress enacted ERISA in 1974 to reform the field of employee welfare and pension plans after national disclosures of fraud, theft, and embezzlement in the administration of such plans. Bluntly stated, through ERISA, "Congress sought to correct the pattern of wasting and looting which had resulted in a devastating denial of benefits to the intended recipients of plans.” (National Bank v International Bhd. of Elec. Workers Local No. 3, 69 AD2d 679, 684 [2d Dept 1979].)
To achieve this objective, ERISA repealed previous Federal legislation that left the regulation of employee benefit plans to *587 the States, and it established pension plan regulation "as exclusively a federal concern.” (Alessi v Raybestos-Manhattan, Inc., 451 US 504, 523.)
In federalizing this field, ERISA standardized rights and obligations in employee benefit plans on a national scale. In particular, title I of ERISA imposes participation, funding, and vesting requirements on pension plans (29 USC §§ 1051-1086); establishes funding standards to increase solvency of pension plans (29 USC §§ 1081-1085); and sets various uniform standards for both pension and welfare plans regarding reporting, disclosure, and fiduciary responsibilities (29 USC §§ 1021-1031, 1101-1114). (Shaw v Delta Air Lines, 463 US 85, 91 [1983]; Alessi v Raybestos-Manhattan, Inc., supra, 451 US, at 510-511, n 5.)
To ensure Federal control in this field, Congress enacted a broad preemption clause (29 USC § 1144 [a]) which renders unenforceable those State statutes, rules, and State court decisions that "relate to” the terms and conditions of employee benefit plans (29 USC § 1144 [c] [1], [2]). Specifically, the preemption clause provides that ERISA "supersede^] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan” (emphasis added). (29 USC § 1144 [a].) The key to understanding the scope of this clause rests in the language "relates to” and Congress’ intent in using those words. (Savings & Profit Sharing Fund v Gago, 717 F2d 1038, 1040 [7th Cir 1983].)
The Supreme Court has read the phrase "relates to” expansively. Under this approach, "A law 'relates to’ an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.” (Shaw v Delta Air Lines, supra, 463 US, at 96-97; Ingersoll-Rand Co. v McClendon, 498 US 133, 139 [1990]; FMC Corp. v Holliday, 498 US 52, 58-59 [1990].) Thus, a State law may "relate to” a benefit plan even if it is not specifically designed to affect such plans, or the effect is only indirect, or even if it is consistent with ERISA’s substantive requirements. (Ingersoll-Rand Co. v McClendon, supra, 498 US, at 139; Pilot Life Ins. Co. v Dedeaux, 481 US 41, 48 [1987]; Alessi v Raybestos-Manhattan, Inc., supra, 451 US, at 525.)
The preemption clause reflects Congress’ concern that employers who establish employee benefit plans undertake a variety of administrative obligations such as the determina *588 tian of eligibility for benefits, the calculation of benefit levels, monitoring the availability of funds, and the maintenance of accurate records needed to comply with applicable reporting requirements, and that "A patchwork scheme of regulation would introduce considerable inefiiciencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Pre-emption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations.” (Fort Halifax Packing Co. v Coyne, 482 US 1, 11 [1987].)
With this in mind, ERISA preempts State laws that are specifically designed to affect employee benefit plans, and such laws are unenforceable even if they are intended to effectuate ERISA’s underlying purposes. (Mackey v Lanier Collection Agency & Serv., 486 US 825, 829 [1988] [ERISA preempts State statutes that specifically exempt employee ERISA benefits from garnishment by creditors].) Whether ERISA preempts State laws that indirectly affect employee benefit plans, however, requires a case-by-case analysis. In this regard, the determining factor is whether the particular State law threatens to undermine regulatory uniformity in the field of employee benefit plans. Those laws which threaten uniformity will be preempted, and those which do not will survive preemption.
Thus,, for example, in Alessi v Raybestos-Manhattan, Inc. (supra), the Court held that ERISA preempted a New Jersey workmen’s compensation statute that prohibited the deduction of workmen’s compensation benefits from the retirement benefits due to workers under an employee benefit plan. Since Federal law and several States allowed such deductions, the Court reasoned that the New Jersey statute created the danger of varying and conflicting rules regarding the calculation of employee benefit levels and was preempted. (Accord, FMC Corp. v Holliday, supra [ERISA preempts State antisubrogation laws which prohibit employee benefit plans from deducting a claimant’s tort recovery from health benefits previously paid to the worker under an ERISA plan]; Shaw v Delta Air Lines, supra [ERISA preempts a New York antidiscrimination law that effectively requires employers to provide disability benefits to pregnant workers which neither Federal law nor the laws of other States required]; Stone & Webster Eng’g Corp. v Ilsley, 690 F2d 323 [2d Cir 1982], affd sub nom. Arcudi v Stone & Webster Eng’g Corp., 463 US 1220 [1983] *589 [ERISA preempts State statutes which require employers to continue providing health and life insurance coverage to former workers who are receiving workmen’s compensation benefits].)
Similarly, ERISA preempts State common-law contract and tort claims that threaten the achievement of national uniformity in the regulation of the terms and conditions of employee benefit plans. In Ingersoll-Rand Co. v McClendon (supra), for example, the Court held that ERISA preempted a worker’s State common-law wrongful discharge claim which alleged that his employer pretextually discharged him four months before his pension was due to vest in order to avoid having to make further contributions to his pension fund. In the Court’s view, allowing that claim would subject employers with employees in different States to varying standards applicable to the same conduct and would require them to tailor the terms and conditions of employee benefit plans and their own conduct to the peculiarities of the law of each jurisdiction. "Such an outcome is fundamentally at odds with the goal of uniformity that Congress sought to implement.” (Supra, at 484; accord, Pilot Life Ins. Co. v Dedeaux, 481 US 41, 47-48, supra [ERISA preempts State common-law tort and contract actions that allege wrongful denial and improper processing of applications for benefits under an insured employee benefit plan]; Metropolitan Life Ins. Co. v Taylor, 481 US 58, 62-64 [1987] [same].)
Notwithstanding its breadth, ERISA’s preemption clause does have limits. First, the clause is aimed at State laws that relate to employee benefit plans rather than State laws that relate to employee benefits. (Ingersoll-Rand Co. v McClendon, supra, 498 US, at 139.) Thus, in Fort Halifax Packing Co. v Coyne (supra), the Court held that ERISA did not preempt a State statute that required employers to provide a one-time severance payment to employees in the event of a plant closing even though ERISA governs the terms and conditions of employee severance pay plans. In the Court’s view, the State statute only required the provision of a one-time employee benefit and did not impact upon an existing severance pay plan or impose ongoing burdens upon the administration of the employee benefit plan as a whole. (Supra, 482 US, at 7-8,11.) This result was supported both by the preemption clause’s express language which supersedes only those State laws that "relate to any employee benefit plan” and the congressional goal of displacing only those State laws *590 which impose additional ongoing administrative burdens upon employers who seek to satisfy their obligations under ERISA. (Supra; accord, Ingersoll-Rand Co. v McClendon, supra, 498 US, at 139.)
Second, ERISA does not preempt State laws that only incidentally "relate to” employee benefit plans. (Ingersoll-Rand Co. v McClendon, supra, 498 US, at 139; Shaw v Delta Air Lines, supra, 463 US, at 100, n 21; Rebaldo v Cuomo, 749 F2d 133, 138 [2d Cir 1984].) As the Court noted in Shaw, "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to’ the plan.” (Shaw v Delta Air Lines, supra, at 100, n 21.)
Thus, in Mackey v Lanier Collection Agency & Serv. (supra), the Court held that ERISA does not preempt a State general garnishment statute which allows judgment creditors to sue ERISA plans and reach a judgment debtor’s ERISA benefits. General garnishment laws like the one involved in Mackey are procedural mechanisms for the enforcement of judgments which do not create any substantive causes of action, new bases for relief, any grounds for recovery, or rules of decision for the determination of liability in any case. (Supra, 486 US, at 834, n 10.) In the Court’s view, neither ERISA’s language, structure, nor legislative history indicated that Congress intended to forbid the use of such State-law mechanisms for executing judgments against ERISA plans, even when those mechanisms tangentially impact upon ERISA plans by imposing administrative costs and burdens upon plan trustees and preventing plan participants from receiving their benefits. (Supra, 486 US, at 832; accord, American Tel. & Tel. Co. v Merry, 592 F2d 118, 121 [2d Cir 1979] [ERISA does not preempt the enforcement of Family Court support orders against an employee’s ERISA plan benefits]; Savings & Profit Sharing Fund v Gago, 717 F2d 1038 [7th Cir 1983], supra [same]; Lane v Goren, 743 F2d 1337 [9th Cir 1984] [ERISA does not preempt general State antidiscrimination laws which do not regulate the terms and conditions of employee benefit plans].)
The New York Court of Appeals has followed this approach. In Sasso v Vachris (66 NY2d 28 [1985]), for example, it held that ERISA did not preempt section 630 of New York’s Business Corporation Law which permits employees to sue corporate shareholders in State court to recover unpaid employee benefit plan contributions that are due under collective *591 bargaining agreements. Although this statute affects ERISA plans, the Sasso Court reasoned that the connection was only peripheral since the statute does not affect the substantive terms of ERISA plans; rather, it only creates a private cause of action for the collection of benefits which corporations are already obligated to provide. (Supra, at 33.) Under these circumstances, the statute is not preempted by ERISA. (Supra, accord, Planned Consumer Mktg. v Coats & Clark, 71 NY2d 442 [1988] [ERISA does not preempt State court orders authorizing judgment creditors to attach ERISA pension funds utilized by judgment debtors to fraudulently shield assets]; Cornell Mfg. Co. v Mushlin, 70 AD2d 123 [2d Dept 1979] [same].)
Finally, ERISA does not preempt State criminal laws or State statutes which regulate insurance, banking, or securities. (29 USC §1144 [b] [2] [A]; [4]; Franchise Tax Bd. v Laborers Vacation Trust, 463 US 1, 25 [1983]; FMC Corp. v Holliday, 498 US 52, 56-57; Lane v Goren, supra, at 1339.)
In line with its goal of assuring Federal control in the area of employee benefit plans, Congress also vested Federal courts with nearly exclusive jurisdiction over claims which "relate to” ERISA plans and intentionally restricted access to State courts by parties to an ERISA plan. (29 USC § 1132 [e].) Here, too, however, Congress carved out certain types of cases over which State courts could exercise concurrent jurisdiction, i.e., civil actions commenced by plan participants or beneficiaries to recover, enforce, or clarify their rights to benefits "under the terms of the plan”. (29 USC § 1132 [a] [1] [B]; Pilot Life Ins. Co. v Dedeaux, supra, at 52-55; Young v Sheet Metal Workers’ Intl. Assn., 112 Misc 2d 692, 700 [Sup Ct, Nassau County 1981]; Duffy v Brannen, 148 Vt 75, 84, 529 A2d 643, 648 [1987].) However, in exercising concurrent jurisdiction, State courts are to apply Federal law to the resolution of the litigation. (Young v Sheet Metal Workers’ Intl. Assn., supra, at 700; Menhorn v Firestone Tire & Rubber Co., 738 F2d 1496, 1499-1500 [9th Cir 1984].)
For purposes of concurrent jurisdiction, the phrase "under the terms of the plan” has been given a restrictive interpretation. Specifically, the phrase has been held to mean that State courts have concurrent jurisdiction under section 1132 (a) (1) (B) where "the participant or beneficiary asks the court, as in a typical contract action, to construe or apply the terms of the plan to the facts of his/her particular issue.” (Young v Sheet *592 Metal Workers’ Intl. Assn., supra, at 701; Menhorn v Firestone Tire & Rubber Co., supra, at 1500, n 2; Duffy v Brannen, supra, 148 Vt, at 84, 86, 529 A2d, at 648, 650.) In Duffy, for example, an employee sued her former employer in State court to recover benefits that the employer never deposited into an employee Keogh plan which was subject to ERISA regulation. Under the terms of the Keogh plan, the employer was mandated to make these contributions. Rejecting the employer’s argument that Federal courts had exclusive jurisdiction over this claim, the court held that this was a claim where the employee sought to enforce rights and recover benefits "under the terms” of an ERISA plan since "all the court is required to do is interpret the terms of the Plan”. (Supra, 148 Vt, at 86, 529 A2d, at 650.) Accordingly, the State court possessed concurrent jurisdiction under 29 USC § 1132 (a) (1) (B). (Supra; accord, Rodriguez v Travelers Ins. Co., 54 Wash App 725, 775 P2d 973 [1989].)

B. Resolution of the Motions

1. Breach of Contract
Based on the foregoing, I find that ERISA does not preempt plaintiffs breach of contract claim, and that the Civil Court has jurisdiction under 29 USC § 1132 (a) (1) (B) to determine that claim.
This claim does not ask this court to interfere with the terms and conditions of Interfaith’s pension plan or determine whether defendants breached their fiduciary duties under title I of ERISA. Plaintiff does not, for example, challenge a decision to deny him benefits, the method used to calculate benefits, or the level of benefits to which Interfaith says he is entitled. On the contrary, he merely seeks to recover a benefit that Interfaith has acknowledged owing him. Unlike the breach of contract claims preempted in Ingersoll-Rand Co. v McClendon (498 US 133, supra), Pilot Life Ins. Co. v Dedeaux (481 US 41, supra) and Metropolitan Life Ins. Co. v Taylor (481 US 58, supra), resolution of plaintiffs claim will neither undermine regulatory uniformity in the field of employee benefit plan regulation nor the policy considerations underlying ERISA’s preemption clause. Under these facts, plaintiffs breach of contract claim only peripherally relates to the terms and conditions of Interfaith’s employee benefit plan and does not "relate to” that plan as this phrase is understood *593 for preemption purposes. (Shaw v Delta Air Lines, 463 US 85, supra; Sasso v Vachris, 66 NY2d 28, supra.)
Moreover, this court possesses concurrent subject matter jurisdiction to adjudicate plaintiff’s claims. Since Interfaith acknowledges owing the funds plaintiff seeks under the terms of the TDA, the resolution of this claim would merely require the court to enforce plaintiff’s acknowledged contractual rights and Interfaith’s acknowledged debt. This is precisely the type of claim that the Civil Court may adjudicate under ERISA. (29 USC §1132 [a] [1] [B]; Young v Sheet Metal Workers’ Intl. Assn., supra; Duffy v Brannen, supra; Rodriguez v Travelers Ins. Co., supra.)
Interfaith contends, however, that the funds plaintiff seeks to recover in this case are not really "pension funds” because they were never deposited into his TDA; rather, they represent the damages plaintiff claims to have sustained as a result of defendants’ alleged breach of contract. Interfaith concludes, therefore, that the Federal courts would have exclusive jurisdiction over this cause of action even if it is not preempted (29 USC § 1132 [e]), and the State courts would lack concurrent jurisdiction pursuant to 29 USC § 1132 (a) (1) (B). This argument is without merit.
As Duffy v Brannen (supra) makes clear, a claim that an employer has failed to fund an ERISA pension plan as required by the terms of an employee benefit plan arises "under the terms of’ the pension plan and triggers a State court’s concurrent jurisdiction. In such a case, State courts are empowered to resolve the claim on the basis of Federal law. (Young v Sheet Metal Workers’ Intl. Assn., supra, at 700; Rodriguez v Travelers Ins. Co., supra, at 975.)
Lastly, defendants contend that the essence of plaintiff’s complaint is that they breached a fiduciary duty they owed him under title I of ERISA, and that State courts lack jurisdiction over such claims. (Young v Sheet Metal Workers’ Intl. Assn., supra, at 701; Duffy v Brannen, supra, 148 Vt, 529 A2d, at 651.) This argument, too, is without merit. While it is conceivable that defendants’ conduct may have breached their fiduciary duties under ERISA, plaintiffs request for recovery is not based on this theory. The gravamen of his claim is that he is entitled to payment of the undeposited portion of his TDA by reason of his employment contract and Interfaith’s acknowledgment of the debt. On this record, the Civil Court has jurisdiction to hear the claim. (Duffy v Brannen, supra; Rodriguez v Travelers Ins. Co., supra.)
*594 2. Plaintiff’s Tax Claim
Plaintiffs second cause of action seeks compensatory damages related to Interfaith’s breach of contract, i.e., the tax liability he estimates he will incur as a result of Interfaith’s breach of contract ($7,039). His contention appears to be that Interfaith’s conduct deprived him of the benefit of certain tax shelter provisions available under the Internal Revenue Code (26 USC). Specifically, the Internal Review Code provides that a rollover of funds from one TDA to another would be tax free if accomplished within a single taxable year (26 USC § 403 [b] [8] [A]). Since plaintiff rolled over his Interfaith TDA funds into another account shortly after he resigned, he contends that the undeposited funds involved in this litigation will be taxed.
The question posed by plaintiffs tax claim is whether he may recover compensatory damages against Interfaith by reason of its breach of contract. Although the Supreme Court has held that ERISA does not authorize damages for emotional distress or punitive damages against employee benefit plan administrators for breach of their fiduciary duties under 29 USC § 1109 (a) and § 1132 (a) (2), it deliberately left open the question whether other sections of ERISA might authorize other types of damages. (Massachusetts Mut. Life Ins. Co. v Russell, 173 US 134, 139, n 5 [1985].) In particular, the Russell Court noted that it was not reaching the question whether 29 USC § 1132 (a) (3) authorized compensatory damages. (Supra.)
This section authorizes ERISA plan participants, beneficiaries, and fiduciaries to commence civil actions "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan” (29 USC § 1132 [a] [3] [emphasis added]). By its terms, this section authorizes the commencement of civil actions to obtain "other appropriate equitable relief’ for, inter alla, violations of the terms of an ERISA plan. Significantly for our purposes, the Sixth Circuit Court of Appeals recently held in Warren v Society Natl. Bank (905 F2d 975 [6th Cir 1990]) that this provision authorized the award of the tax liability incurred by a former employee benefit plan participant under a factual pattern strikingly similar to the case at bar.
In Warren (supra), a physician instructed the trustee of his ERISA retirement plan to transfer all of the assets in his *595 section 403 (b) retirement plan accounts to another bank during the 1984 tax year. His aim was to take advantage of the rollover provisions contained in the Federal tax code and to shelter the funds from taxation. Contrary to these instructions, however, the trustee only transferred a portion of these funds in the 1984 tax year and transferred the rest during the 1985 tax year. Consequently, the funds transferred in 1985 were taxed, and the plaintiff sued to recover the taxes he had to pay.
The issue before the court was whether section 1132 (a) (3) (B) "permits the recovery of compensatory damages to redress a direct injury to a participant by a fiduciary that allegedly violated its contractual duty under the terms of the retirement plans and under the provisions of ERISA”. (Warren v Society Natl. Bank, supra, at 981.) In holding that it does, the court applied the trust and contract law principles which guide the interpretation of section 1132 (a) (3) (B). Specifically, it noted that in crafting remedies for ERISA plan violations, courts are to be guided by the principle that ERISA plan beneficiaries, like the beneficiaries of a trust, are entitled to remedies " 'which will put [them] in the position [they] would have been if the trustee had not committed the breach of trust.’ ” (Supra.)
The Warren court further observed that the "term 'other appropriate equitable relief [contained in section 1132 (a) (3) (B)] implies a broad range of remedies”, and that courts should interpret this provision generously " 'so as to effectuate the important congressional goals’ ”. (Supra, at 982.) Significantly, in this regard, Congress’ intent in enacting civil enforcement provisions like section 1132 (a) (3) (B) was to " 'provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants’.” (Reid v Gruntal & Co., 763 F Supp 672, 677 [D Me 1991].) Interpreting the "other appropriate equitable relief’ language of section 1132 (a) (3) (B) against this background and further noting that Congress’ main goal in enacting ERISA was to "make certain that participants and beneficiaries not be deprived of the full value of their plan benefits by a fiduciary’s breach of a contractual duty” (Warren v Society Natl. Bank, supra, at 982), the Warren court concluded that section 1132 (a) (3) (B) must be interpreted to authorize *596 courts to award compensatory damages for losses sustained by plan participants as a result of a breach of their contractual rights under an ERISA plan. (Supra; accord, Corcoran v United Healthcare, 965 F2d 1321, 1335-1337 [5th Cir 1992] [common-law contract law principles support the award of make-whole money damages under section 1132 (a) (3) (B)].)
Applying this reasoning, I find that section 1132 (a) (3) (B) authorizes the award of the compensatory damages plaintiff seeks. As the courts held in Warren v Society Natl. Bank (supra) and Reid v Gruntal & Co. (supra), the nature of the "other appropriate equitable relief’ authorized by section 1132 (a) (3) (B) is very broad and encompasses make-whole monetary relief. (Accord, Corcoran v United Healthcare, supra.) As in Warren, the compensatory damages plaintiff seeks here flow directly from Interfaith’s breach of contract and will reimburse him "dollar-for-dollar” for the tax indebtedness he will sustain as a result of Interfaith’s contractual breach. Granting such relief is both within the Civil Court’s statutory jurisdiction (CCA 202) and consistent with ERISA’s policy of ensuring that plan participants receive the full value of their plan benefits.
However, I find that summary judgment is inappropriate at this time based upon the factual record before the court, and that an evidentiary hearing must be held to determine the appropriate level of damages to which plaintiff may be entitled on this cause of action. This hearing will be held before this court on March 31, 1993 at 2:15 p.m. in room 1407 of this courthouse.
3. Remaining Jurisdictional Issues
Defendant’s claim that this action must be dismissed because plaintiff did not serve the DOL with his complaint prior to the commencement of this action is without merit. ERISA expressly dispenses with such service where the plaintiff’s claims, as here, invoke the State court’s concurrent jurisdiction clause. (29 USC § 1132 [h].)
Finally, defendants’ request for a discretionary stay pending the completion of the DOL investigation into Interfaith’s administration of its pension plan is also denied. Contrary to defendants’ assertions, State court determination of this action does not threaten Congress’ goal of achieving national uniformity in the field of employee benefit plans, and defendants have not demonstrated how this court’s resolution of *597 plaintiffs claims would pose such a threat. In light of this court’s undisputed jurisdiction to resolve this litigation, discretion is appropriately exercised to resolve plaintiffs claims.
CONCLUSION
Accordingly, defendant’s motion to dismiss this action is denied, and plaintiffs cross motion for summary judgment against Interfaith in the amount of $14,039 on his first cause of action is granted. Plaintiffs cross motion for summary judgment against defendants Price and Sherril must be denied, however, since plaintiff has not demonstrated any factual or legal basis for the relief he requests against them. Plaintiffs motion for summary judgment on his second cause of action is granted only to the extent of setting the matter down for an evidentiary hearing to determine the appropriate level of damages to which he may be entitled on this claim.